

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
SEP 2 9 2025
CLERK, U.S. DISTRICT COURT
By _____
Deputy

## IN THE UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF TEXAS

## DALLAS DIVISION

JEFFREY NDUNGI SILA, Petitioner                No. 3:25-CV-1708-B (3:16-CR-448-B)

v.

UNITED STATES OF AMERICA, Respondent

## PETITIONER'S REPLY BRIEF

## I. INTRODUCTION AND SUMMARY

The response is a masterclass in evasion. It offers a procedural attack where a substantive

defense is required and ignores the fundamental truth of this case: that the government itself

secured a conviction on a "wrongful taking" charge by presenting evidence of a "sale", an

entirely distinct legal act. It's continued attempt to conflate these two separate acts is the very

"fundamental error" that the extraordinary remedy of a writ of coram nobis is designed to

correct. Mr. Sila's petition is not a rehash of old arguments, but a necessary challenge to an

injustice that could not have been fully addressed until the government's own admissions came

to light.

Mr. Sila now relies solely on the powers of this Court to correct a profound error that led to the

wrongful conviction of an innocent man.

1

As a *Pro Se* litigant, he requests liberal construction.

## II REBUTTAL TO RESPONSE'S ARGUMENTS

### A. This is a New Claim of "Actual Innocence" based on the government's own admissions (Supporting paragraph 1 of the Petition).

The response dismisses this petition as a mere "regurgitation" of previously litigated claims (Doc 5, PageID 55). This argument is a hollow and disingenious attempt to evade the merits of the petition and conveniently omits its own on-the-record concessions that undermine the entire foundation of the conviction.

This petition rests on a new legal claim--that the government affirmatively established Mr. Sila's innocence of the "wrongful taking" when it conceded on appeal that its evidence "did not show that Sila filed the fraudulent tax return related to the Cynthia Short refund" and that it "did not focus its case on how the refund check came into Sila's possession." These are not minor points; they are affirmative concessions that the Government failed to prove that the Petitioner committed the very act--the wrongful taking of the check--that was necessary for a conviction under the jury instructions.

This petition is not a procedural bypass; it is the direct and necessary consequence of a profound legal error that went uncorrected. The response's attempt to dismiss it as a mere procedural irregularity is an insult to the very concept of justice.

### B. Coram Nobis is The proper remedy for this unique situation(Supporting Paragraphs 1-2 of

*the petition)*

The argument that Petitioner's claim has been "litigated and lost" ignores the procedural

obstacles that prevented a full and fair adjudication of this issue. As detailed in the petition, the

Government's constantly shifting theories and the ambiguity of the proceedings created a

series of roadblocks for the Petitioner. The response's dismissal of Petitioner's procedural

history as a "series of excuses" is a cynical attempt to deflect from its own role in creating an

atmosphere of "unfairness and uncertainty." *Russel v. United States,* 369 U.S. 749 (1962). This is

not a typical case of a defendant simply failing to raise a claim; it is the story of an "arduous

struggle" against a "moving target" of the prosecutions ever-shifting theories of guilt--from a

"wrongful taking" indictment in 2016; to a "sale" in 2016 at trial; to a "taking" in 2015 during

jury deliberations; and back to a "sale" on appeal--which created a profound ambiguity that

justifies the use of this writ.

The response's procedural-bar argument ignores that a writ of *coram nobis* is an extraordinary

remedy for an extraordinary injustice--a "complete miscarriage of justice" when a petitioner is

no longer in custody. To suggest Petitioner should have been able to raise this specific claim on

appeal is to suggest that he should have predicted the government's final, contradictory

position before it was even articulated. Such a requirement would be patently absurd.

As explained in his Petition and unrebutted, the Fourth Circuit held in a recent *coram nobis* case

that "actual innocence, if proved, serves as a gateway through which a petitioner may pass

[even if] the impediment is a procedural bar..."*United States v. Lesane*, 40 F.4th 191, 196 (4th Cir.

3

2022). The response has failed to address this "actual innocence" argument, instead relying on procedural technicalities that are inapplicable to the facts of this case.

The Fifth Circuit has also held that ineffective assistance of counsel, if proven, can be grounds for coram nobis relief. *United States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004). Petitioner described extensively how his attorneys failed to spot the claim. Also *Sanchez v. United States*, 2007 U.S. Dist. LEXIS 108913, 2007 WL 9757565, at *3 (S.D. Tex. Jan. 26, 2007), aff'd, 482 F. App'x 953 (5th Cir. 2012) (petitioner showed sound reasons for delay when he established that he did not seek relief sooner because of his attorney's bad advice).

As this very Court has previously required, by describing in considerable detail his "arduous struggles" to try to bring his claims fully before the court, the Petitioner believes he has shown he has consistently "exercised 'reasonable diligence in seeking prompt relief.'"*Viju v. United States*, 2021 U.S. Dist. LEXIS 191538 (N.D.TX Hon Jane J. Boyle Presiding).

### C. The Fifth Circuit Did Not Resolve This Claim on Direct Appeal (Supporting Paragraphs 4-5 of the Petition)

The response rests on a mischaracterization of the Fifth Circuits prior ruling, arguing that the court already concluded the indictment was based "solely on the August 9, 2016 Dallas transaction." (Doc 5, PageID 56).

The appellate court did not rule on the legal sufficiency of the "sale" to prove the "wrongful taking". It simply accepted the government's premise that the conviction was based on the

2016 "sale" theory. The government's own admissions prove that no "wrongful taking" occurred in 2016, and Mr. Sila did not commit the "taking" that occurred in 2015. The response's continued attempt to conflate these two seperate acts remains the precise error this petition seeks to correct.

The *Coffman* case simply held that stealing and conversion overlap, just as the jury was instructed in this case -- that they are synonyms with the same exact meaning. It says nothing of selling being the legal equivalent of stealing. In fact, it also mentions without elaborating "that there are *two* separate crimes, not *seven* in the *first paragraph alone*."

*D. "Taking" and "Selling" are Legally and Factually Distinct Offenses(Supporting Paragraph 3 of the Petition)*

The response asserts Petitioner's argument is "factually wrong" because he was "charged and convicted...solely for the August 9, 2016 Dallas transaction where Sila knowingly converted the IRS treasury check into cash."

To argue that "knowingly converting into cash" is legally equivalent to "stealing" or "converting" is a direct contradiction of the jury instructions and established Fifth Circuit precedent. The jury was expressly instructed that to "steal" or "knowingly convert" means a "wrongful taking" with "intent to deprive the owner of its use or benefit." A sale is the act of relinquishing possession, which is the logical and legal opposite of a taking. One cannot "take" something by "selling" it. The government cannot now redefine the elements of the crime to

save an unjust conviction. Such a fluid and contradictory approach to criminal justice is an

affront to the fundamental principles of due process.

E. *"Converting into cash"*

The response is being intellectually dishonest when it wholly ignores the binding jury

instructions' multi-part definition of conversion; and instead describes the act of "sale" as

"converting into cash". This phrase has no criminal meaning. It is the *lay* intepretation of the

term where convert simply means to "*change* or *transform*"(Ballentine's Law Dictionary, 3rd

Edition). Selling something is changing, or transforming, or as the government says, converting

it into cash. For example when one sells their house or car, they could say "I *converted* my house

or car *into cash*". *But* applying the binding, legal meaning given to the jury of *wrongfully taking*,

they cannot say I "*wrongfuly took*" my house or car. Indeed, such an interpretation would

criminalize selling property and would be absurd.

Petitioner could only find cases that use the phrase in a non-criminal way, let alone an 18

U.S.C. § 641 violation:

"The same is true of stock, which must be *converted into cash* and deposited in the employee's
account before she can enjoy its monetary value." *Cent. Ltd. v. United States* 138 S. Ct. 2067, 2076
(2018).

"The Liquidating Plan Trust was created to liquidate assets that could not be readily *converted
into cash...*"*TXMS REAL ESTATE INVESTMENTS, INC. v. SENIOR CARE CENTERS, LLC,* 622
BR 680 (N.D.TX 2020).

F. *The Inaccurate Indictment*

6

In its response, the government, the sole charging authority, said nothing about its admission

that its own indictment, what the Supreme Court in *Russell* called "the very core of criminality",

was *inaccurate*. This was during critical jury deliberations in response to the jury question, and

after this Court pressed the government to "clarify" its allegations. And only moments after the

government had doubled-down during closing argument in response to defense counsel's

question--that the "theft occurred" when the indictment "alleged it did--August 9th, 2016."

The Fifth Circuit relied heavily on this *inaccurate* indictment in its ruling, stressing its *date* and

*location*. Had the court known it was *inaccurate*, that the year was "*actually 2015*" and *not*

"August 9th 2016" (thereby changing the location to *Kenya* as opposed to Dallas), there is no

doubt the outcome would have been different.

It cannot be said with certainty that an indictment which the government itself called

*inaccurate*, "**fairly** inform[ed] the defendant of the charge against which he must defend" as

required by this Court in *United States vs Sneed*, 2022 U.S. Dist. LEXIS 856 (NDTX 2022).

Neither can it be said that such an indictment "*sufficiently appris[ed] the defendant of what he must*

*be prepared to meet*..."and whether "*the record shows with accuracy* to what extent he may plead a

former acquittal or conviction..." nor did such indictment "fully, directly, and expressly,

without any *uncertainty* or *ambiguity*, set forth all the elements necessary to constitute the

offence intended to be punished". *Russel*. Such an indictment

"requires the defendant to go to trial with the chief issue undefined. *It enables his conviction to*
*rest on one point and the affirmance of the conviction to rest on another. It gives the prosecution free*
*hand on appeal to fill in the gaps of proof* by surmise or conjecture."*Russell v. United States*, 369 U.S.

749, 763, 82 S. Ct. 1038, 8 L. Ed. 2d 240, (1962).

What the United States Supreme Court abhors is *precisely* what is happening here.

### G. The Press Release

Petitioner cited the press release to show the government itself intepreted the verdict as "illegally obtaining" the check in 2015. The response insists it referred only to its mere "delivery" in 2016. This doesn't help the government, however, as 18 U.S.C. § 641 does not prohibit *delivery* of property. Such an intepretation would put even ordinary mail delivery men at risk of arrest. It only proscribes *illegally obtaining* government property i.e wrongfully taking.

### H. The government's silence on the key issue of actual innocence

The response has avoided entirely the central issue of the petition: whether petitioner is legally and factually innocent of the offense charged in the indictment. It steered clear of the controlling law of the case: the binding instructions and definitions given to the jury which the petitioner described in painstaking detail.

Most notably, the response said absolutely *nothing* about the requisite:

1. wrongful *taking* of the check from the government;
2. According to the Black's Law Dictionary (12th ed. 2024) the definition of take is "to *obtain possession or control*" implying *gaining* possession; as contrasted against that of sell: to "*transfer*(property) by sale" which implies *relinquishing* possession
3. intent to *deprive* the government of its check vs. what the government described in the record only as "intent to *sell*"
4. the appreciable *change in location* of the check; and
5. *removal* from of check *from the owner's* (government's) premises
6. the answer of the court to the jury reiterated *theft* allegation which ordinarily means act of *stealing.*

8

The only act that would fit the jury instructions was the *mailing* of the check as a result of the fraudulent filing--an act the Government admitted on appeal petitioner did not commit.

The response also remained loudly silent on the mountain of precedent that speaks to the legal distinction between conversion and selling: *Hawkins,* 458 F.2d at 1156; *Medrano,* 836 F.2d at 863; *Reagan,* 596 F.3d at 255 et al.

It is trite law that [i]f a party fails . . to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . (2) consider the fact undisputed for purposes of the motion; [and] (3) grant summary judgment if the motion and supporting materials-including the facts considered undisputed-show that the movant is entitled to it[.]Fed. R. Civ. P. 56(e)(2), (3).

## III. CONCLUSION

The response fails to refute the central premise of Mr. Sila's petition: he was convicted of a crime he did not commit, based on a theory of guilt that was legally and factually impossible under the binding jury instructions. Based on this record, it can hardly be said the Petitioner stands *fairly* and *lawfully* finally convicted.

It is a rare case where at trial, the government admits its own indictment is inaccurate. It is perhaps an even rarer case where on appeal, the government subsequently admits the defendant is not guilty of its "corrected" version of that indictment.

The net effect of which is the extraordinary case where the government's own admisions declare the defendant innocent.

9

Petitioner was taken into ICE custody on August 22, 2025 and is held under conditions far

harsher than what he experienced in the penal Bureau of Prisons.

He now relies on this Court to exercise its broad authority to bring a final end to this continued

injustice by swiftly granting his petition. This would in turn enable his eligibility for relief from

removal based on a straight-forward family petition filed by his U.S Citizen mother.


Respectfully Submitted

Jeffrey Sila

Jeffrey Sila A# 095-760-199
Calhoun County Jail
185 E Michigan Ave
Battle Creek, MI 49014


### Certificate of Service

Petitioner hereby certifies that on 2ǀ September, 2025 he submitted to the Detention Center
Officers a true copy of this Reply Brief for mailing via USPS in a postage pre-paid envelope
addressed to:

Office of the Clerk
Northern District of Texas,
1100 Commerce St Room 1452,
Dallas TX 75242

for electronic filing which will automatically notify all parties of record.

Respectfully Submitted

Jeffrey Sila

Jeffrey Sila A# 095-760-199
Calhoun County Jail
185 E Michigan Ave
Battle Creek, MI 49014

10

From
Jeffrey Sila A# 095-760-199
Calhoun County Jail
185 E Michigan Ave
Battle Creek, MI 49014

LEGAL MAIL

United States District Court
Northern District of Texas
1100 Commerce St Room 1452
Dallas, TX 75242

752423 1310 C001

PAY

CLERK US DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

SEP

pm

USA * FOREVER